# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
10 Grand Central
155 East 44th Street – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102

March 29, 2021

**BY ECF**

Hon. Stewart D. Aaron, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      **Re:**  *Conde v. ROM Grocery Corp., et al.*
         <u>*Case No. 20-CV-2086 (SDA)*</u>

Dear Judge Aaron,

  We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with counsel for defendants seeking the Court's approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously herewith, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

## I.  *The Need for the Court's Approval of the Agreement*

  As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

Hon. Stewart D. Aaron, U.S.M.J.
March 29, 2021
Page 2

## II.     Plaintiff's Claim for Unpaid Wages

Defendants own and operate a bakery and restaurant doing business as "Bagels & Schmear," located at 114 East 28th Street in Manhattan (the "Restaurant"). Since 2000, in addition to operating as a retail bakery and restaurant, the defendants also provide full-service catering, wholesale, and delivery service.

Plaintiff is a former employee of the Restaurant, who was hired by the defendants in or about September 2011 to work as a food preparer/kitchen helper, sandwich maker, cashier, and customer attendant. Plaintiff's employment ended on or about February 21, 2020. Although his work hours fluctuated slightly each week, plaintiff alleges that he typically worked between fifty-four (54) and sixty (60) hours per week.

According to plaintiff, he was paid on an hourly basis straight time for all hours worked. Mr. Conde alleges being paid at the following rates throughout the relevant limitations period:

- March 2014 – December 2015: $10/hour[1]
- 2016: $11/hour
- 2017 – 2018: $12/hour
- 2019 – February 21, 2020: $15/hour

## III.    The Alleged Facts Contested by the Settling Defendants

Defendants produced plaintiff's punch clock records for 2018 through the remainder of his employment on February 21, 2020, which corroborate plaintiff's contention that he worked an average of fifty-seven (57) hours per week until 2018, and fifty-four (54) hours in 2019.[2] However, the critical issue in this case, and the primary factual dispute, directly relates to the other information contained on time cards. Plaintiff's position is that the defendants required him to sign his time card at the end of each week in order to receive his cash wages. Plaintiff admits to signing the time card each week. What is in dispute, however, is what information was on the time card at the time it was signed. According to plaintiff, the only information contained thereon was his name, the date, and the computerized times that reflect when he punched in and out each day. However, the time cards also contain other handwritten information, which purport to show how much plaintiff was paid each week. Meanwhile, the defendants contend that the amount of pay shown on the punch card demonstrates that plaintiff was paid at the statutory minimum wage, and received time and one-half for all overtime hours worked. Defendants maintain that this information was on the time card at the time plaintiff signed them. Plaintiff vehemently deny this contention.

---

[1] The relevant six (6) year limitations period under the New York Labor Law relating to plaintiff's wage claims begins in March 2014.
[2] In calculating plaintiff's estimated damages, we used these as the average number of hours worked for the entirety of the claim period – e.g., 57 hours for 2014-2018, and 54 hours for the remainder, which is essentially what is alleged in the complaint.

Hon. Stewart D. Aaron, U.S.M.J.
March 29, 2021
Page 3

According to plaintiff, a careful review of the time cards reveals numerous deficiencies, including that the defendants engaged in the unlawful practice of time-shaving – meaning that when calculating plaintiff's work hours, they did not count the time to the precise minute. Instead, the defendants routinely rounded down. Second, many of the time cards are simply nonsensical in that they show that plaintiff was often paid more money in one week compared to another despite working fewer hours, or where the number of hours worked is the same or virtually the same, but the amount allegedly paid is significantly different.

Defendants dispute plaintiff's analysis of the records and maintain that any discrepancies are few and far between and actually show that plaintiff was paid properly for all hours worked.

### IV.    The Settlement

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $36,000 to resolve all of plaintiff's wage and hour claims against the defendants, payable in three (3) consecutive and equal monthly installments of $12,000.00 commencing within ten (10) days of the Court's approval of the Agreement and dismissal of the case.

### V.    The Agreement is Fair and Reasonable

We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about the value of plaintiff's claims.

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.,* 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also In re Penthouse Executive Club Compensation Litig.,* No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions, as well as through the Court's recommendation during a settlement conference before Your Honor on March 5, 2021. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013).

In light of the various disputes concerning plaintiff's claims, as well the risk of ongoing litigation, this settlement should be approved. By settling now, plaintiff a significant portion of his underlying unpaid wages even after attorneys' fees and costs are deducted, while enabling the parties

Hon. Stewart D. Aaron, U.S.M.J.
March 29, 2021
Page 4

to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiff during mediation, he made the decision to accept the defendants' offer. It is respectfully submitted that, in view of the foregoing, this settlement is a reasonable compromise of disputed issues and should therefore be approved.

### VI.     *Application for Attorneys' Fees*

Pursuant to this firm's retainer agreement with plaintiff (copy attached), our firm seeks retain one-third of the net proceeds of the settlement after expenses are deducted.[3] Therefore, counsel seeks $11,717.83 in fees, and $843 in costs, for a total fee application of $12,560.83.

Attorneys' fees in FLSA settlements are examined, to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiffs' counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees. Additionally, as stated above, plaintiff is being made whole even after fees and costs are deducted.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees over in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, courts routinely hold that a contingency fee award is presumptively valid where "the proposed fee amount is exactly one-third of the net settlement amount, which is an amount routinely approved under the percentage method" in this District, "particularly where it is pursuant to a previously negotiated retainer agreement." *See Yunjian Lin v. Grand Sichuan 74 St Inc.*, No. 15 Civ. 2950, 2018 U.S. Dist. LEXIS 110266, at *15-16 (S.D.N.Y. July 2, 2018) (citations omitted); *Daniels v. Haddad*, 17 Civ. 8067, 2018 U.S. Dist. LEXIS 212861, at *2-3 (S.D.N.Y. Dec. 17, 2018). Here, plaintiff agreed to a one-third contingency retainer agreement with counsel in connection with his wage-and-hour claims.

If the Court were to analyze counsel's fees on a lodestar basis, the Court should still approve the Agreement. Counsel's lodestar is more than the fees requested herein. Cilenti & Cooper, PLLC's requested rates ($400 per hour for lawyers and $100 for paralegal) have repeatedly been approved as reasonable. *See Rescalvo v. BTB Events & Celebrations Inc.*, 16 Civ. 7647 (PAE) (S.D.N.Y. Jan. 24, 2018); *Gonzalez, et al. v. Crosstown Diner Corp., et al.;* No. 16 Civ. 2544 (BCM) (S.D.N.Y. 2017); *Sierra v. Skyline Gourmet Deli*, No. 15 Civ. 3319 (SN) (S.D.N.Y. 2016); *Romero v. Lu Woodside Mini Mall, Inc.*, No. 15 Civ. 5030 (PK) (E.D.N.Y. 2016); *Catalan, et al. v. H&H Kim Corp., et al.*, No. 15 Civ. 7443 (DF) (S.D.N.Y. 2016). Attached hereto is a copy of Cilenti & Cooper, PLLC's billing records for work performed on this matter.

---

[3] The firm's expenses total $843 consisting of the filing fee to commence the action ($400), and service of process ($443).

Hon. Stewart D. Aaron, U.S.M.J.
March 29, 2021
Page 5

      For all of the reasons set forth above, the parties respectfully request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal, which is being submitted simultaneously herewith, that expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

Respectfully submitted,

*Justin Cilenti*

Enclosures

cc: David A. Feinerman, Esq. (by ECF)